(117 App. Div. 726)

KELSHAW v. BANKERS' LIFE INS. CO.

(Supreme Court, Appellate Division, First Department. February 15, 1907.)

INSURANCE—RESERVE—MORTUARY FUND.

> Defendant insurance company was first organized as a fraternal organization, the members being assessed $1 a head on each death. It was afterwards reincorporated as an assessment company, and its original members who were then living were placed in a separate class, known as "Class A," it being agreed that they should be assessed $1 a head on each death, and the beneficiary should receive not less than $1,000. The new members who formed class B were to be paid from a fund of $1 a thousand on all insurance written each year in that class which amount should also create a mortuary fund to make up deficiencies in class A. This fund was kept up until 1899, when the corporation was reorganized as a stock company, when it was discontinued. *Held*, that the corporation thereafter, having kept the reserve required by Insurance Law, § 84, Laws 1892, p. 1968, c. 690, on all class A policies, and having set aside a mortuary fund on all class B business written between its reincorporation as an assessment company and its reorganization as a stock company, had performed its obligations to its class A policy holders.

Submission of controversy on agreed statement of facts by Jonathan Kelshaw against the Bankers' Life Insurance Company. Judgment for defendant.

This controversy is submitted under section 1279, Code Civ. Proc. upon an agreed statement of facts, as follows: The Bankers' Life Insurance Company of the City of New York is a corporation originally organized as a fraternal organization March 24, 1869, under the name of "Bank Clerks' Mutual Benefit Association of the City of New York." On the 15th day of August, 1884, it was formally incorporated under chapter 175, p. 172, of the Laws of 1883, under the same name, and was thereafter, on June 28, 1893, reincorporated under article 6 of chapter 690, p. 2004, of the Laws of 1892, known as the "Insurance Law" for the purpose of doing business on the regular assessment or cooperative plan, under the same name. By an order of the Supreme Court of the state of New York, made April 27, 1894, its name was changed to the Bankers' Life Insurance Company of the City of New York. Pursuant to the provisions of chapter 690, p. 1718, of the Laws of 1893, entitled "An act authorizing all insurance companies transacting business on the co-operative or the assessment plan to reincorporate as a stock corporation under its existing corporate name." it reincorporated as a stock corporation on the 2d of August, 1899, with a capital stock of $100,000, and has ever since been doing business as a stock company.

In June, 1893, when the Bank Clerks' Mutual Benefit Association of the City of New York reincorporated for the purpose of doing business on the assessment or co-operative plan, it was possessed of funds and securities amounting in value to some $112,000. The membership then consisted of 1,175 persons. The evidences of membership were a mere naked certificate, entitling the

person named therein to the benefits and privileges of membership without setting these facts forth. As a matter of fact, pursuant to different resolutions of the membership and the directors, the membership was assessed $1 a head on each death, and the beneficiaries named in the certificate of the deceased member received the proceeds. On the reincorporation as an assessment company, it was agreed that the membership amounting to 1,175 were to be known as "Class A." It was agreed that as to them that they should be assessed $1 on each death, and the beneficiaries should be paid not less than a $1,000. The new members who were expected to come in under the assessment or co-operative plan should be called "Class B." It was agreed that as to them there should be set aside a fund of $1 per 1,000 on all the insurance written each year on class B, and determined as of the 31st day of December. The purpose of this fund was as follows: When the membership of class A got to be below 1,000 there would be a deficit on each death which the mutual company would be bound to make up, and so this $1 a thousand was meant to create a mortuary fund for the purpose of making up such a deficiency. This mortuary fund was kept in existence until 1899, when the corporation was reorganized as a stock company, since which time it was discontinued by the management, for the reason that it was deemed to be no longer required. The company having become a stock corporation, it had to carry a reserve, figured by the department of insurance and by the company on the basis of section 84 of the insurance law, Laws 1892, p. 1968, c. 690. and it carried this reserve on all the different kinds of policies, to wit, on the fraternal policies of class A, on the assessment policies of class B, and also on the new policies it issued as a stock company. No separate mortuary fund for the protection of class A was thereafter ever kept by the company or reported in the annual reports filed each year by the company with the superintendent of insurance to sections 44 and 45 of the insurance law. It was deemed by the management sufficient that the reserve called for by section 84 should be kept on hand, and that they should add to this $1 a thousand on all class B, insurance in force on the 31st day of December, of each year, but that it was not necessary for them to increase this fund by $1,000 on all the new business written as a stock company since 1899. Plaintiff being of full age, is a member of class A, in good standing having paid all calls upon his certificate of membership No. 296. Plaintiff demands judgment that the defendant be directed to create, maintain, and keep a fund of $1 a thousand on all its outstanding risks covering not only class B business written between June 28, 1893, and August 21, 1899, and all business to be written thereafter. Defendant prays for judgment that the submission of the plaintiff be dismissed, and that the defendant upon keeping the reserve called for by section 84 of the insurance law upon class A policies, and setting aside a mortuary fund of $1 per thousand upon all class B business written between the 28th day of June, 1893. and the 21st day of August, 1899, be decreed to have fulfilled its obligations to class A.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

George W. Carr, for plaintiff.

D. Cady Herrick, for defendant.

SCOTT, J. If the provision for adding to the reserve for the protection of class A policy holders of the sum of $1 for each $1,000 of insurance written in class B policies, can be considered in any sense a contract between the company and the class A policy holders, there was certainly no such contract respecting insurance written under the present organization of the company. At present all outstanding policies, as well those known as "Class A," as the later ones, are protected by the reserve required and provided for by the insurance law, and this is to be presumed to be sufficient. We see no ground, therefore, for

the contention that, in addition to this legal reserve, there should be set
$1 for each $1,000 of new insurance written by the present corporation.

There must be judgment, without costs for the defendant, to the
effect that it will have fulfilled its obligations to plaintiff as the holder
of a class A policy, by keeping for the protection of his policy the re-
serve called for by section 84 of the insurance law, and setting aside a
mortuary fund of $1 per $1,000 upon all insurance written under class
B policies.  All concur.